Jones and Alford *vs.* Tarver.

---

No. 54.—SEABORN JONES and WILLIAM ALFORD, plaintiffs in error, *vs.* PAUL E. TARVER, defendant in error.

[1.] Where a deed is executed under a power of Attorney, a mere mis-recital of the power in the deed, is no objection to the latter, if it appears that power was sufficient to authorize the execution of such a deed.

[2.] The Statute does not prescribe the form of the Sheriff's return of service; and when the return does not show that the service was not legal, it will be presumed to be fair and legal.

[3.] The Act of 1823, usually known as the Dormant Judgment Act, does not apply to judgments obtained prior to the 19th December, 1822.

[4.] The decisions of a Court of competent jurisdiction, as to the matter before it, are to be presumed to be well founded and its judgments regular.

Jones and Alford *vs.* Tarver.

[5.] Evidence pertinent to the issue in the Court below, is admissible.

[6.] Under the evidence in this case, it was not error in the Court to charge the Jury, that if they should be satisfied, from the evidence, &c. that the lessor of the plaintiff was dead, they should find for the defendant.

Ejectment, in Dougherty Superior Court.    Tried before Judge PERKINS, November 'Term, 1855.

On the trial of this case, the defendant below, Paul E. Tarver, offered in evidence a deed from one John G. Coleman to T. J. Johnson, executed by Thomas Coleman, as Attorney in fact, which deed recited that Thomas Coleman was appointed Attorney in fact, to execute a deed to Johnson. He also offered letters of Attorney from John G. Coleman to Thomas Coleman, giving general power to sell and convey this lot of land.    To these papers plaintiff objected, on the ground that the general letters did not sustain the deed. The Court over-ruled the objection, and plaintiff excepted.

The defendant then offered in evidence a deed from Gunnerson, Sheriff of Baker County, to John G. Coleman, and an exemplification of the record of a judgment in Hancock Superior Court, in favor of Johnson *vs.* Gore & Alford (the drawer and lessor of plaintiff.)    Also, a *fi. fa.* purporting to be an established copy, and the order establishing the same.

To these papers plaintiffs' Counsel objected—

1st.  Because the exemplification showed that no legal service had ever been made on the defendant.

(On this point the entry by the Sheriff was, "Copies left at the house of defendant.")

2d.  Because the said judgment and execution was dormant.

(On this point, the judgment was rendered in 1820.    The copy *fi. fa.* was established in 1845, without any entries except "*nulla bona*," in 1820.    The levy on the land was in 1846.)

3d.  The judgment was presumptively paid off, from the lapse of twenty years.

Jones and Alford *vs.* Tarver.

4th. Presumption of satisfaction of the *fi. fa.* from lapse of time.

5th. This presumption could be rebutted only by regular proceeding by *sci. fa.*

6th. The *fi. fa.* was illegal and void, being an *alias fi. fa.* which the Court had no right to issue.

(On this point the order showed that this second *fi. fa.* was issued in lieu of the original, which was lost.)

7th. The order for issuing this *fi. fa.* was void, because the Court had no authority to issue a second *fi. fa.* and because notice was not given to defendants in *fi. fa.* and because the record showed there was no evidence of loss of original, but the affidavit of the party.

8th. Because the Sheriff's sale under this void *fi. fa.* was itself null and void.

The Court over-ruled all of the objections, and admitted the evidence. To this decision plaintiffs excepted.

Defendants then offered in evidence the testimony of sundry witnesses, to show that William Alford, one of the lessors of plaintiff, (and the only one in whom they proved title,) had been absent from Hancock County, (where he formerly resided,) and had not been heard from for twenty or twenty-five years, and was insolvent when he left. Plaintiff objected to this testimony as irrelevant. The Court admitted it, and plaintiff excepted.

The Court charged the Jury, that if they were satisfied, from the evidence, that plaintiff, Alford, was dead, then they must find for defendant. To this charge plaintiffs excepted.

On these exceptions error is assigned.

Judge BENNING, being related to one of the parties, did not preside in this case.

R. F. LYON, for plaintiffs.

VASON; BOWER, for defendant.

Jones and Alford *vs.* Tarver.

*By the Court.*—McDONALD, J. delivering the opinion.

This was an action of ejectment for the recovery of a tract of land lying in the County of Baker. After the plaintiff had closed his case, the defendant offered in evidence, as one of his muniments of title, a power of Attorney executed by John G. Coleman to Thomas Coleman, dated 18th day of December, 1850, authorizing him to sell and convey the land in controversy, and a deed, reciting a power of Attorney, of same date, executed by Thomas Coleman, as agent of John G. Coleman, to Thomas J. Johnson, conveying the same land. The deed bears date 10th January, 1850, and recites, further, that the power of Attorney authorized the agent to convey to Thomas J. Johnson. Both power of Attorney and deed, were objected to, on the ground that the power of Attorney offered in evidence was a general one, and that recited in the deed was a special one. The objection was over-ruled, and this ruling of the Court is made the first ground of exception.

[1.] There was, no doubt, a mis-recital of the terms of the power in the deed. But the date of the power and the date stated in the recital, are the same. A power to sell and convey, generally, is a good power to convey to Johnson; or rather, the conveyance to Johnson is a good execution of the power to sell and convey, generally. The recital of the authority is no part of the deed. The power of Attorney offered in evidence, was made in Hancock County; and it is recited in the deed to have been made in Hancock County. The objection was properly over-ruled.

The defendant next offered in evidence a deed from the Sheriff of the County of Baker, conveying the land under a sale, as the property of William Alford; and with it, he tendered an exemplification from the records of Hancock Superior Court, showing the judgment and the entire proceedings of the Court prior thereto, together with the copy *fi. fa.* under which the land was sold, established at October Term,

1845, of said Court, in lieu of the original, which had been lost, and the order of the Court directing it to be issued. The plaintiffs' Counsel objected to the evidence on several grounds.

[2.] The objection to the legality of the service of the declaration on the defendants, cannot be sustained. The Statute defines what shall be a good service of process, but prescribes no form for the Sheriff's return of service. The Sheriff's return shows that he had left copies " at the house of the defendants."

He is a sworn officer, and it will not be presumed that, contrary to his duty, he left copies at house of defendants, not their notorious places of abode. The presumption of law is in favor of a fair and legal service.

[3.] The judgment and execution were not dormant. The Dormant Judgment Act does not apply to judgments obtained prior to the 19th December, 1822. This judgment was rendered on the 15th April, 1820.

If it was dormant, then it must have been by the operation of some law before the Act of 1823. According to the practice as it is understood to have prevailed in Georgia, prior to the year 1812, if an execution was not sued out within a year and a day from the signing of the judgment, and there was no sufficient cause for the delay, the judgment must have been revived by *scire facias* before an execution could issue. The rule in England, however, was different when an execution had been issued ; for if the writ of execution was issued, but not executed within the year and a day, but returned within the year, continuances might have been entered upon the roll, from term to term, to the time of the execution, which might have been at any time after the year, and as good as if the judgment had been revived by *scire facias*. (1 *Seller's Prac.* 515.)

This last mentioned rule, in regard to *executions*, was abolished by the Judiciary Act of 1799, re-enacted in 1811. (*Cobb's New Digest*, 510.) That Act declares, that " *executions shall be of full force until satisfied*, without the same being obliged to be renewed on the Court roll, from year to

year, as theretofore practiced." The judgment in this case, was entered up on the 15th April, 1820, and the execution was returned "*nulla bona,*" on the 20th of August of the same year. Hence, the execution not being subject to the Act of 1823, and not having been satisfied, was of full force. It is insisted that the judgment was dormant. The Judiciary Act of 1798, being silent in respect to judgments on which no execution should issue, it was held, as hereinbefore stated, that after a year and a day, they must be revived by *scire facias,* before an execution could be issued on them.

. This construction of that Statute led to the Act of 1812, which declares, that no part of the Judiciary Laws of this State shall be so construed as to require the renewal of any *judgment* as heretofore practiced, or in any other manner whatever. Hence, all judgments to which the provisions of the Act of 1823 do not apply, must be good and valid indefinitely, unless satisfied. If the renewal of a judgment cannot be required "*in any manner whatever,*" no *laches* can be imputed to the plaintiff for failing to renew.

It is due to my learned brother (LUMPKIN) who presides with me in this case, to say, that while he does not dissent from the views here presented, he has some doubts in regard to them.

[4.] I proceed, now, however, to a reason for admitting the evidence in which we fully concur. The whole of the matters which constitute the grounds of the plaintiffs' objection to the execution and judgment as evidence, have been adjudicated by the Superior Court of Hancock County. The original cause was tried then, and at October Term, 1845, the writ of *fieri facias,* under which the land was sold, was ordered to be issued, in lieu of one that had been lost. The Court was one of competent jurisdiction, and its decisions are to be presumed to be well founded, and its judgment regular. These reasons apply to and dispose of all the objections to the admissibility of the exemplification as evidence, and also of the deed which depended on them.

[5.] The testimony of the witnesses objected to, was pro-

perly received.    It was pertinent to the issue presented in the argument in the Court below, though not necessary, perhaps, under the view we have taken of the law.    It certainly tended to repel the presumption of the payment of the execution, and to establish the insolvency and presumptive death of the lessor of the plaintiff, whose title to the land had been sold by the Sheriff, and which was the only title submitted by the plaintiff to the Jury.

[6.] The charge of the Court in regard to the death of the lessor of the plaintiff, was right.    According to the date of the demise, in the declaration, the legal presumption of his death arose before that time; and though the lease is a fiction, it must be alleged to have been made by a person in *esse*, capable of making a lease.    In many of the States, the death of the lessor of the plaintiff, pending the action, abates the suit; and although it seems not to have that effect in England, yet, the land cannot be recovered after his death, but the costs only; and a trial merely for the costs, under these circumstances, is unknown, in practise, there.    The judgment of the Court below is affirmed.